**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Conrad Albert KROUSE, III, Defendant–Appellant.**

No. 02–50458.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 30, 2004.

Filed June 4, 2004.

William J. Kopeny, Irvine, CA, for the defendant-appellant.

Todd T. Tristan, Assistant United States Attorney, Santa Ana, CA, for the plaintiff-appellee.

Before: GOODWIN, PREGERSON, and TALLMAN, Circuit Judges.

TALLMAN, Circuit Judge:

For the first time in this circuit, we must decide what it means to possess a firearm "in furtherance of" a drug trafficking offense under 18 U.S.C. § 924(c)(1)(A). In so doing, we affirm the conviction and 161–month sentence of Conrad Albert Krouse.[1] We conclude that sufficient evidence supports Krouse's conviction for possession of a firearm "in furtherance" of a drug trafficking crime under § 924(c) because the facts in evidence demonstrate a sufficient nexus between the weapons discovered in Krouse's home and his drug trafficking operation.

## I

This case began with an investigation into the disappearance of various arcade and vending machines from a tavern in Buena Park, California. Suspecting that Krouse had stolen the machines, local police officers executed a search warrant on his home. They discovered the missing machines plus five firearms, ammunition, 86.5 grams of cocaine, and almost 150 pounds of marijuana.

Krouse was ultimately indicted on five federal weapons and drug charges, including one count of possession of firearms in furtherance of a drug trafficking offense.

See 18 U.S.C. § 924(c). At trial, Krouse claimed that the drugs and weapons discovered in his home belonged to two associates known as "Rhythm" and "Poetry." Krouse testified that the pair had commandeered his home office where most of the contraband was discovered. His story proved unconvincing. Krouse was convicted after trial by jury on four of five counts and sentenced to 161 months in prison.[2] His appeal was timely.

## II

We are asked to interpret 18 U.S.C. § 924(c), which criminalizes possession of a firearm "in furtherance of" a drug trafficking or violent crime. Krouse contends that insufficient evidence supports his conviction under this statute. We disagree.

18 U.S.C. § 924(c)(1)(A) provides in relevant part:

[A]ny person who ... in furtherance of any ... crime [of violence or drug trafficking offense] possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime ... be sentenced to a term of imprisonment of not less than 5 years.

We focus on the narrow question of whether the firearms discovered in Krouse's home "further[ed]" his drug trafficking operation.[3]

---

1. Krouse raised other issues on appeal, which we address in a memorandum disposition filed contemporaneously with this opinion.

2. Krouse was convicted for possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d) (count one); possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (count two); possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) (count three); and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). The district court dismissed a

second count of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) (count five), because the jury could not reach a verdict on this charge. This appeal concerns Krouse's conviction on count two.

3. There is no dispute that sufficient evidence supports the jury's conclusion that Krouse "possessed" the firearms discovered in his home. See United States v. Lott, 310 F.3d 1231, 1247 (10th Cir.2002) ("Possession under § 924(c)(1) can be shown through either constructive or actual possession.").

To "further" means "to help forward ... promote [or] advance." MERRIAM–WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002). As used in § 924(c), the House Judiciary Committee intended that "[t]he government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense." H.R.Rep. No. 105–344 (1997), 1997 WL 668339, at *12 ("House Report").

■ Evidence that a defendant merely possessed a firearm at a drug trafficking crime scene, without proof that the weapon furthered an independent drug trafficking offense, is insufficient to support a conviction under § 924(c). *See United States v. Lawrence,* 308 F.3d 623, 629–31 (6th Cir. 2002) (distinguishing firearms possessed "in furtherance of" drug trafficking from another unused firearm discovered at the same crime scene); *United States v. Wahl,* 290 F.3d 370, 375 (D.C.Cir.2002) ("[T]he mere presence of a firearm at the scene of drug trafficking is insufficient to support a conviction under section 924(c)(1)."); *United States v. Ceballos–Torres,* 218 F.3d 409, 414–15 (5th Cir.2000) (same); House Report at *12 ("The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence."). Congress indicated that supplementing evidence of mere possession with expert testimony that drug traffickers often carry firearms in the course of doing business presents a borderline case under § 924(c). *See* House Report at *12; *see also United States v. Iiland,* 254 F.3d 1264, 1274 (10th Cir.2001) ("The fact that drug dealers in general often carry guns for protection is insufficient to show possession in furtherance of drug activity in [this] particular case.").

■ A conviction for possession of a firearm "in furtherance of" a drug traffick-ing offense or crime of violence under § 924(c) requires proof that the defendant possessed the weapon to promote or facilitate the underlying crime. *See United States v. Lomax,* 293 F.3d 701, 705 (4th Cir.2002) ("[Section] 924(c) requires the government to present evidence indicating that the possession of a firearm furthered, advanced, or helped forward, a drug trafficking crime."); *United States v. Mackey,* 265 F.3d 457, 461 (6th Cir.2001) ("[Under § 924(c),] the weapon must promote or facilitate the crime."); House Report at *12 ("[T]he government must illustrate through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity"). In other words, this element of § 924(c) turns on the intent of the defendant. *See United States v. Basham,* 268 F.3d 1199, 1208 (10th Cir.2001).

■ *When an appellant challenges the sufficiency of evidence* supporting his conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In *Ceballos–Torres,* the Fifth Circuit suggested that consideration of the following factors "might" help answer this question: the type of drug activity involved, the accessibility of the firearm, the type of weapon, whether the weapon is stolen, whether the defendant legally possessed the weapon, whether it is loaded, the proximity of the weapon to the drugs, and the time and circumstances under which the gun is found. 218 F.3d at 415. These factors inevitably evolved into an eight-part "test." *See, e.g., United States v. Suarez,* 313 F.3d 1287, 1292 (11th Cir.2002). Such tests may not aid the analysis in all cases.

Although the *Ceballos–Torres* factors may help distinguish a lawfully-owned wall-mounted antique from a firearm possessed to further drug trafficking or a crime of violence, *see* 218 F.3d at 415, the Fifth Circuit's guidance is less helpful in closer, and more common, cases. When a handgun is discovered in the trunk of a drug dealer's car, or under his pillow, or in a gun safe, the *Ceballos–Torres* factors do not help distinguish possession for the promotion of drug trafficking from possession for other, perhaps legitimate, purposes. Nor do we believe that loaded or unregistered firearms are particularly indicative of drug trafficking or crimes of violence. When deciding whether sufficient evidence supports a conviction under § 924(c), we will not resort to a checklist that has little relation to the crime charged.

■ We hold that sufficient evidence supports a conviction under § 924(c) when facts in evidence reveal a nexus between the guns discovered and the underlying offense. *See United States v. Luciano,* 329 F.3d 1, 6 (1st Cir.2003) (affirming a conviction under § 924(c) because the evidence established "a sufficient nexus" between firearms and drug trafficking activity); *Mackey,* 265 F.3d at 462 ("[W]e emphasize that the possession of a firearm on the same premises as a drug transaction would not, without a showing of a connection between the two, sustain a § 924(c) conviction."); *United States v. Finley,* 245 F.3d 199, 203 (2d Cir.2001) ("[T]he requirement in § 924(c)(1) that the gun be possessed in furtherance of a drug crime may be satisfied by a showing of some nexus between the firearm and the drug selling operation."); House Report at *12 ("The Committee believes that one way to clearly satisfy the 'in furtherance of' test would be additional witness testimony connecting [the defendant] more specifically with the firearm.").

## III

■ We affirm Krouse's conviction under § 924(c) here because ample evidence establishes the nexus between the firearms discovered in his home office and the drug trafficking operation discovered in the same room. No less than five high caliber firearms, plus ammunition, were strategically located within easy reach in a room containing a substantial quantity of drugs and drug trafficking paraphernalia.[4] *See Luciano,* 329 F.3d at 6 (finding that guns discovered in "close proximity ... to [a] significant stockpile of heroin" established a "nexus" between the weapons and drug trafficking activity); *Lawrence,* 308 F.3d at 630 ("The jury's verdict ... is supported by the close proximity of the weapons to the drugs and the fact that these weapons were found either loaded or with ammunition."); *Basham,* 268 F.3d at 1208 ("[A] firearm that is kept available for use if needed during a drug transaction is 'possessed in furtherance of' drug trafficking[.]"); *Mackey,* 265 F.3d at 462 ("[T]he firearm must be strategically located so that it is quickly and easily available for use."); *cf. Iiland,* 254 F.3d at 1274 (reversing a conviction under § 924(c) because "[t]here was no evidence that the gun and drugs were ever kept in the same place or that[the defendant] ever kept the gun accessible while conducting drug transactions."). We also note that other

---

**4.** The weapons were discovered in a dresser in Krouse's home office. Police found a Colt .45 caliber semi-automatic handgun, a .38 caliber Derringer, and an Interarms .380 caliber handgun—all of which were fully-loaded. Police also discovered a short-barrel .410 gauge shotgun with shells and an unloaded Colt Python .357 magnum revolver. Additional ammunition was also recovered.

firearms, which Krouse apparently kept for purposes unrelated to his drug business, including a shotgun in his bedroom closet and a collectable rifle, were stored elsewhere throughout his home. When this evidence is viewed in the light most favorable to the successful prosecution, a jury could conclude that Krouse possessed the weapons discovered in his home office in furtherance of his drug trafficking operation.

Krouse's conviction under § 924(c) is **AFFIRMED.**