**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

ABRAHAM GARCIA MONDRAGON,

        Defendant - Appellant.

No. 15-30011

D.C. No. 3:10-cr-05220-RBL-1

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted April 5, 2016
Seattle, Washington

Before: GILMAN,[**] RAWLINSON, and CALLAHAN, Circuit Judges.

    Defendant-Appellant Abraham Garcia Mondragon appeals his conviction for

possession of a firearm in furtherance of a drug-trafficking crime, in violation of

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

    [**]    The Honorable Ronald Lee Gilman, Senior Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

18 U.S.C § 924(c)(1)(1)(A)(i), (c)(2).  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1.      Sufficient evidence supports Mondragon's conviction.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (holding that evidence is sufficient if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original)).  In order to show that a defendant possessed a gun in furtherance of a drug-trafficking crime, "the government must show that the defendant intended to use the firearm to promote or facilitate the drug crime."  *United States v. Rios*, 449 F.3d 1009, 1012 (9th Cir. 2006) (citing *United States v. Krouse*, 370 F.3d 965, 967 (9th Cir. 2004)).  "Whether the requisite nexus is present may be determined by examining, inter alia, the proximity, accessibility, and strategic location of the firearms in relation to the locus of drug activities."  *Id.* at 1012 (citing *Krouse*, 370 F.3d at 968).  On the other hand, "mere possession of a firearm by an individual convicted of a drug crime is not sufficient for a rational trier of fact to convict under § 924(c)(1)(A)."  *Id.*

Viewing the facts in the light most favorable to the prosecution, a rational jury could conclude that Mondragon possessed a firearm in furtherance of

2

possession of methamphetamine with the intent to distribute. *See United States v. Mosley*, 465 F.3d 412, 417–18 (9th Cir. 2006) ("The jury could infer that Mosley advanced his drug operation by using the guns to secure his merchandise and profits so he could continue his business."); *Krouse*, 370 F.3d at 968 ("[A]mple evidence establishes the nexus between the firearms discovered in his home office and the drug trafficking operation discovered in the same room."). Mondragon admitted to government agents that a gun was in his apartment. He consented to a search and led agents to a walk-in the closet where they discovered a loaded handgun inside a jacket pocket. Moreover, the gun was three to four feet away from a table containing methamphetamine, packaging material, a cutting agent, and a digital scale. Agents also found a large amount of cash in the pocket of a shirt hanging near the table in the closet. Agents also recovered an additional 1,760 grams of methamphetamine from an attic space. The jury could therefore easily conclude that Mondragon prepared drugs for sale at his house with his loaded gun nearby for protection given the large amount of drugs and cash he possessed.

2.      The district court did not abuse its discretion in admitting expert testimony regarding the relationship between firearms and drug trafficking. *See United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002) (holding that a district court's decision to admit or exclude expert testimony is reviewed for an abuse of

discretion).  Federal Rule of Evidence 704(b) provides that, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.  Those matters are for the trier of fact alone."  However, "[l]aw enforcement experts may testify as to the general practices of criminals to establish the defendants' modus operandi," including a hypothetical drug dealer's desire to have a firearm in furtherance of a drug-trafficking offense.  *United States v. Anchrum*, 590 F.3d 795, 804 (9th Cir. 2009) (internal quotation marks omitted); *United States v. Taren-Palma*, 997 F.2d 525, 534 (9th Cir. 1993) (per curiam), *overruled on other grounds by United States v. Shabani*, 513 U.S. 10, 11 (1994).

Agent Jewell testified that, based on his experience, drug dealers may possess firearms to protect against being robbed or to intimidate others.  Jewell also explained that mid- to upper-level drug dealers carry firearms because they have more to protect (or more to lose).  However, Jewell never expressed an ultimate opinion as to whether Mondragon himself intended to carry a firearm in furtherance of a drug-trafficking crime, but instead admitted that he "ha[d] no specific knowledge about this case."  Thus, the jury was permitted to draw its own inference from Jewell's testimony about hypothetical drug dealers to answer the ultimate question of whether Mondragon had the intent to use a firearm in

4

furtherance of a drug-trafficking crime.  As in *Anchrum* and *Taren-Palma*, Agent Jewell's expert testimony was permissible.

**AFFIRMED.**